Adam Paul Pollack (APP 9833)
Pollack & Sharan LLP
15 Maiden Lane, Suite #1400
New York, New York 10038
(212) 619-5800
Adam@Pollacksharan.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
IN RE:                                              CHAPTER 11

ALTA CUCINA 2, LLC f/k/a ALTA CUCINA, LLC
d/b/a AVENA DOWNTOWN,                               DOCKET NO. 21-12103 (LGB)

    DEBTOR.
------------------------------------X

TO:  HONORABLE LISA G. BECKERMAN
     UNITED STATES BANKRUPTCY JUDGE

<u>**OPPOSITION OF MACDOUGAL & SIXTH REALTY LLC ("LANDLORD") TO DEBTOR'S MOTION**</u>

**MACDOUGAL & SIXTH REALTY LLC**, ("Landlord") submits the following in response to the Debtor's application seeking an Order:

I.  Extending by ninety (90) days the time period within which Debtor must assume or reject its unexpired Lease of non-residential real property; and

II. Related relief.

<u>**BACKGROUND**</u>

1. Landlord is the Owner of the Building known as and located at 260-262 Sixth Avenue and 264 Sixth Avenue, New York, New York 10014 (the "Building").

2. On or about June, 2017 Landlord entered into a commercial Lease (the "Lease") for premises described as 260-262 Sixth Avenue, South and North Store and

Basement in the Building (the "Premises").

3. The Tenant entity described in the Lease was "Alta Cucina LLC." The Lease was for a term from July, 2017 through and including June 30, 2032. At the Court's request on March 15, 2022 this office provided a copy of the Lease which is Docket No. 41.

4. Debtor Alta Cucina, 2, LLC has maintained in this proceeding that it is substantively the same entity as Alta Cucina LLC, the entity on the Lease, and amended the caption to so reflect.

5. Debtor has been in rental arrears since its rental obligations under the Lease began. Debtor was in rental arrears and failed to respond to a summary nonpayment proceeding and was evicted from the Premises in May, 2018. Debtor was restored to possession by the New York City Civil Court only when Debtor paid all of the rent then due on or about July, 2018.

6. Thereafter, Debtor again fell into arrears and the Debtor has not been current on its rental arrears since July, 2018.

7. As a result of Debtor's failure to pay rent on a timely basis, a second summary proceeding was commenced in October, 2018. That litigation was resolved by a Court Ordered Stipulation dated July 19, 2019 in which Alta Cucina LLC, represented by counsel, acknowledged that it was in arrears in the sum of $215,396.67, agreed that it would repay that amount in ten (10) equal monthly installments from March, 2019 through December, 2019, and that it would pay its current rent and additional rent as it accrued each month.

8. Alta Cucina LLC defaulted in its obligations to timely pay its acknowledged arrears and current Lease payments several times in the ensuing months, and the City Marshal served a Notice of Eviction in July, 2019 which precipitated the first Chapter 11 filing in the Bankruptcy Court. The debtor in that filing of July, 2019 was the Tenant entity on the Lease, Alta Cucina, LLC.

9. During the six (6) months of the first Bankruptcy proceeding (*In re: Alta Cucina LLC*, 19-12310 (JLG)) Debtor paid only three (3) months of rent. During that proceeding, Landlord's application to vacate the automatic stay was granted by Judge Garrity. (Docket No. 33, November 18, 2019). Moreover, as the Debtor failed to properly make its filings pertaining to its corporate authorizations and requirements despite admonishments from the Court, that case was dismissed in December, 2019. See minutes and dismissal Order in the prior proceeding at Docket No. 34: Nov. 20, 2019, and Docket No. 35: Dec. 12, 2019)

10. At Paragraph 13 of its current application in this proceeding, Debtor misrepresents how and why the first Bankruptcy proceeding was terminated. The dismissal of the first Chapter 11 case was not because the "case was dismissed shortly after filing when Debtor's investors provided funds to pay a significant portion of the back rent owed" as stated to this Court. Rather, Debtor only paid three (3) of the six (6) months of the Administrative Rent which were due during its first Bankruptcy and the dismissal was specifically due to the Debtor's failure to maintain and provide timely, accurate filings and corporate records. This Debtor, in this proceeding, is acting with the same disregard.

11. After the automatic stay in the first Bankruptcy proceeding was vacated in November, 2019, Debtor unsuccessfully sought to attack the January, 2019 Stipulation and vacate the warrant issued from the State Court.

12. In or about February, 2020 Alta Cucina LLC retained new counsel who again sought to vacate the Stipulation and avoid eviction. The Civil Court conditioned the granting of a preliminary stay of the eviction on Tenant's payment of $250,000.00 to the Landlord. As the arrears at that point in February, 2020 were the sum of $407,728.44 even after payment of the Court ordered amount, the arrears were the sum of $157,728.44.

13. As a result of the New York State moratorium on evictions (which was in place from March, 2020 through January 15, 2022) Debtor remained in possession of the

Premises, paying nothing, and accumulating a further $1,066,847.77 in arrears.

14. The State Court again upheld the validity of the January, 2019 Stipulation and on two (2) occasions, has denied Debtor's applications to vacate the Stipulation and the warrant of eviction.

15. The City Marshal was due to serve the Notice of Eviction on January 16, 2022 when the New York moratorium was to expire, but this Debtor filed the petition in this proceeding on December 21, 2021.

## THE CURRENT PROCEEDING AND APPLICATION

16. Debtor's application should be denied.

17. The burden is on the Debtor to show good cause why its time to elect to assume or reject the Lease should be extended. *In re: Wedtech Corporation*, 72 B.R. 464 (SDNY 1987); *In re: Muir Training Technologies, Inc.*, 120 B.R. 154 (SDCA 1990).

18. Various tests or guidelines have been articulated that should inform the decision whether to enlarge or reduce a Debtor's time to assume or reject an executory contract. *In re: Enron Corp.*, 279 B.R. 695 (SDNY 2002); *In re: Hawker Beechcraft, Inc.*, 483 B.R. 424 (SDNY 2012).

### *Debtor has failed to pay Post Petition Administrative Rent*

19. The Debtor's payment history of its post-Petition obligations is a relevant consideration, although not the only consideration to be assessed. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102 (2nd Circuit 1982), *In re: Burger Boys, Inc.*, 94 F3d 755 (2nd Circuit, 1996).

20. Debtor did not pay its Administrative Rent from the date of its filing (December 21, 2021) until it was ordered to do so by this Court's Order of March 15, 2022. (Docket No. 40) Instead Landlord has been relegated to the filing of its Administrative Claim in the sum of $174,661.41 for the initial 120-day period of this proceeding.

21. Debtor did make the Court ordered payment for the period of April 21, 2022 through April 30, 2022, and did pay May and June, 2022 Administrative Rent in a

more or less timely fashion.

22. Debtor **did not** timely pay July, 2022 Administrative Rent (and only did so on or about July 18, 2022 one (1) day before the expiration of the date Debtor was required to elect to assume the Lease) simultaneously filing of the present Motion that the Debtor paid July, 2022 Administrative Rent, eighteen (18) days after it was due.

23. Moreover, as of the date of filing of these papers, the Debtor **has not** paid August, 2022 Administrative Rent.

### *Debtor has failed to timely elect to assume the Lease*

24. A review of Debtor's moving papers indicates that Debtor has still not made what is likely to be its most significant decision in this case: whether to assume or reject the Lease. On one hand at Paragraph 2 the Debtor states that "the Debtor believes its operations support a decision to assume the Lease," but at Paragraph 19 of the same application Debtor states "if forced to make the decision to assume or reject the Lease at this time, the Debtor would be forced to reject the Lease." This is ambiguous and contradictory. Debtor has had seven (7) months to evaluate matters, and was required by the Code to have made an appropriate election.

25. Although the Debtor's inconsistent post-Petition payments are not the only factor, they should be weighed in the context of the Debtor's opaque financial condition.

### *Debtor has failed to comply with its filing obligations*

26. Debtor has failed to file operating reports since February, 2022. Thus, neither the Court nor the Landlord can have a transparent picture of the Debtor's true financial condition. Even granting the Landlord an Administrative Claim may not adequately protect the Landlord, as Debtor has not provided documentation to substantiate that Debtor has the ability to meet that obligation. What is before the Court does not provide an objective basis to evaluate the Debtor's financial condition.

### *Debtor has failed to address its corporate "irregularities"*

27. Moreover, despite the Debtor retaining two (2) separate tax consulting firms, there are significant tax liabilities and filing irregularities which have not been addressed. Of even more concern are the issues continually raised as to the adequacy and the propriety of the Debtor entities involved in this proceeding. Again, the Debtor signed the Lease under the entity name Alta Cucina LLC. That same entity was the entity acknowledged to be the tenant under the Lease in the State Court summary proceeding, and that entity was the debtor in the first Bankruptcy proceeding filed in this court. The Debtor now claims to be a different entity, namely Alta Cucina 2, LLC. However, the Debtor advises that it has never filed tax returns and that it has never paid any of its tax obligations. The lack of financial documentation was the cause for the dismissal of the first bankruptcy proceeding.

*Debtor has accumulated significant and unaddressed creditors and debt and its financial condition has not demonstratable improved*

28. A review of the claims register in the current case indicates significant tax liability claims at the City, State and Federal levels.

29. Debtor admittedly owes substantial arrears to this Landlord, its largest creditor by far, and must cure the monetary defaults in order to assume the Lease. And again, that the Debtor has not filed an operating statement for any period after February, 2022. Based upon the Claims Register in this case, the Debtor owes significant tax arrears to the City of New York ($231,362.97); to the State of New York ($19,467.23 and $31,003.98); and to the IRS ($37,931.80); in addition to at least $94,164.33 to Consolidated Edison. Debtor has retained two (2) sets of professionals to address its failure to file its tax returns and the need to address the State tax arrears, but seemingly these issues and these filings remain open more than seven (7) months into this case. These filing are significantly similar to Debtor's behavior in the first Chapter 11 proceeding.

### *The severe prejudice to Landlord would be further exacerbated if the application were to be granted*

30. The Debtor's claim that the Landlord is protected either by the filing of an Administrative Claim or improvements to the Premises, are not supported and are rendered suspect by the Debtor's failure to properly and timely provide operating accounts or address any of its financial responsibilities.

### *Debtor has failed to propose a viable Reorganization Plan*

31. The extension of time to assume the Lease should also be denied because the Debtor's filed proposed Reorganization Plan dated March 21, 2022 (ECF No.42) is not confirmable and the Debtor has not shown cause (i.e., provided no explanation) as to what will be accomplished if the relief sought in this application is granted, which would further its dream of a reorganization. The requested additional 90 days from July 19, 2022 through October 17, 2022 to determine whether to assume or reject the Lease is merely an attempt to kick the proverbial can down the road.

32. The Landlord, which currently holds an unpaid administrative claim of $174,661.41and an undisputed unsecured claim of $1,178,795.86 will be casting a ballot in opposition to the filed Plan, thus requiring the Debtor to prove by evidentiary proof, both that the Plan is fair and equitable and that its projections of disposable income over the next five (5) years have factual support.

33. Notably, and in furtherance of the argument that the Debtor has not established cause for a further extension of time to assume or reject the Lease, the Reorganization Plan self-servingly provides that its financials are based on the alleged "revenue" of "comparable restaurants" including "Marandi, Boucherie, The Dutch, and Il

Molina," all of which are established and all of which have an existing following by regular patrons, and all of which have hired professional chefs with impressive resumes, none of which this restaurant has.

34. The Debtor offers no actual analysis with reliable comparable information between it and the "comparable restaurants" including comparative square footage of each of the spaces and /or the number of tables in each of the premises and/or location.

35. The Debtor recognizes these failings because it then goes on to allege that its projections have been substantially discounted. However, perhaps a realistic comparison could be made as to the revenues (and the expenses) of other restaurants, if the Debtor was filing its required monthly operating reports (which it has not done since February, 2022 ECF No. 45). As set forth below, the February 2022 Operating Report contradicts everything the Debtor has alleged thus far.

36. The Plan proposed by the Debtor is not a viable plan as it requires the Landlord to accept less than a full cure of the Lease defaults. The Plan proposed by the Debtor provides that the Debtor would pay less than half of its obligations under the Lease and seeks an additional five (5) years to pay off its remaining obligations. This proposal is not acceptable to the Landlord and is not consistent with Debtor's requirements pursuant to the Code.

37. Of some note is that the Debtor alleges in its Reorganization Plan that an undisclosed third party will invest $500,000.00 (surprisingly since the Debtor projects almost $2,740,000 in projected **net** disposable income over the next 5 years)(ECF No 42; Ex. 4) to be used to pay the Landlord (but only in part, and only on account of what

is owed) and yet no such funds are being held in any escrow account and the so called "investor" is not currently contributing any money toward the administrative rent owed to the Landlord. Curiously, there is no written agreement as to whether the alleged $500,000.00 to be contributed will be deemed an investment in exchange for shares of stock or an exit loan.

38. Although the Debtor alleges that it will pay its debts over the next five (5) years in its Reorganization Plan, Debtor also shows net income of only $29,017.29 in its February Operating Report, while simultaneously acknowledging that it has not paid the January, 2022 ($45,020.35) the February, 2022 ($45,020.35) and the March, 2022 ($45,020.35) rent owed to the Landlord. Simply said, the proffered Reorganization Plan lacks any credible foundation to be built on, and should not be relied on as the Debtor's crutch to support the Debtor's request for a 90-day extension of time to decide if it might assume the Lease.

*The Lease has been terminated under non-Bankruptcy State Law and is not assumable*

39. The Court should also consider whether the Lease is an assumable executory contract. If the Lease was properly terminated under non-Bankruptcy State Law by the issuance of the warrant of eviction in January, 2019 (notwithstanding the change of the New York State Real Property Action and Proceeding Law Section 753) there may be no Lease to assume.

40. Furthermore, despite twice failing in its attempts to vacate the warrant of eviction, the Debtor has made no effort to appeal any of the State Court determinations that the consensual "so ordered" Stipulation of the summary proceeding from January,

2019 remains in full force and effect. It is respectfully submitted that any such appeal is now time barred.

41. Moreover, the Landlord believes that there are construction and premises issues affecting the Building which have gone unaddressed by the Debtor and which will entail extensive financial expenditures by the Landlord. The Debtor's liabilities to the Landlord for rent items alone are approaching one and a half million dollars at this point. The repair items will only increase this amount.

*Conclusion*

42. The Court should view the Debtor's present application to seek a further extension of the time to assume or reject the Lease in the context of the mounting prejudice to this Landlord, the Debtor's lack of transparency, as well as the bare tactical advantage sought by this Debtor seeking to hedge its decision whether to assume or reject the Lease to gain more time, which is increasing the Landlord's liabilities.

43. The Landlord respectfully requests that this Court deny the Debtor's application to extend the time to assume or reject the Lease. The time to assume or reject expired on July 19, 2022. The Debtor had more than adequate time to determine whether to assume or reject the Lease as the statute provided the Debtor with 210 days to make that determination.

44. This Debtor has been in bankruptcy for almost 8 months and there has been no progress made to date. There is no motion to retain a broker to market the Lease and no motion for authority to borrow any money. The Court should not extend the Debtor's time to assume or reject the Lease on the presumptive hopes and dreams of the Debtor to pay the rent "someday."

45. If however, in the exercise of its most lenient discretion, the Court is inclined to provide the Debtor with a final extension of time to determine whether to assume or reject the Lease, it is appropriate that the Court condition that relief on very clear terms and deadlines. The Debtor should be required to pay prospective

Administrative Rent immediately as it becomes due and owing. Again, the Debtor's history of payments both pre-Petition and after the filing of this case is spotty and sporadic. The Court should also approve and require payment of the Landlord's Administrative Claim for the initial 120 days of the post-Petition period as a condition of any extension of time to assume or reject the Lease. Under the circumstances currently presented to this Court, including the lack of transparency of the Debtor's operations and the viability of the entity, providing the Landlord with an Administrative Claim may be no protection at all to the Landlord being subjected to ongoing and further liabilities while this case proceeds. At a minimum, any extension of time the Court might allow should be conditioned on the Debtor paying now all unpaid post filing rent, inclusive of post filing professional fees incurred by counsel to the Landlord.

**WHEREFORE**, it is respectfully requested that the instant application be denied and that this Court grant such other and further relief as may be just and proper under the circumstances.

Dated: New York, New York
August 4, 2022

ADAM PAUL POLLACK (9833)
POLLACK & SHARAN, LLP
ATTORNEYS FOR LANDLORD
MACDOUGAL & SIXTH REALTY LLC
15 MAIDEN LANE, SUITE 1400
NEW YORK, NEW YORK 10038
(212) 619-5800

MACDOUGAL & SIXTH REALTY LLC
LANDLORD
By: _____
Name: Alan Wellman
Title: General Manager